IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **JOSHUA CACHO,** a Texas resident, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **R.R.K. INC.,** a New York corporation, **ROBERT KLEIN,** a New York resident, and **MITCHELL DIGIANTOMASSO,** a New York resident, | § 3:25-cv-00209-LS |
| | § |
| **Defendants.** | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

**1.** Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in El Paso, Texas for all calls relevant to this case.

**2.** Defendant R.R.K. INC., d/b/a EMPIRE NUMISMATIS ("RRK") is a corporation organized and existing under the laws of New York and can be served via agent and Chief Executive Officer at 608 Middle Country Road Middle Island, New York 11953.

**3.** Defendant ROBERT KLEIN ("Klein") is a natural person, registered agent and Chief Executive Officer of RRK and can be served at 608 Middle Country Road Middle Island, New York 11953.

**4.** Defendant MITCHELL DIGIANTOMASSO ("Digiantomasso") is a natural person, employee of RRK and can be served at 43 Wildwood Drive Sound Beach, New York 11789.

1

## JURISDICTION AND VENUE

5.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

6.      This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contracts with Texas and the litigation:

   a. Defendants repeatedly placed telephone solicitation calls to Texas residents and derived revenue from Texas residents, and they sell goods and services to Texas residents, including Plaintiff.

   b. Defendants directed their salespersons to place solicitation phone calls into Texas injuring Plaintiff in Texas.

   c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation trat exceeds the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct*., 141 S. Ct. 1017 (2021).

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the telephone solicitation calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District.

8.      This Court has venue over Defendants because the telephone solicitation calls at issue in

this case occurred in this District.

# THE TELEPHONE CONSUMER PROTECTION ACT
# OF 1991, 47 U.S.C. § 227

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

3

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

22. As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

23. Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be

called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

24. In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

25. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

26. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

27. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 up to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

28. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

**29.** The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### TEXAS BUSINESS AND COMMERCE CODE 305.053

**30.** A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for")

    **(1)** an injunction;

    **(2)** damages in the amount provided by this section; or

    **(3)** both an injunction and damages.

    **(b)** A plaintiff who prevails in an action for damages under this section is entitled to the greater of:

        **(1)** $500 for each violation; or

        **(2)** the plaintiff's actual damages")

    **(c)** If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of:

        **(1)** $1,500 for each violation; or;

        **(2)** three times the plaintiff's actual damages."

### FACTUAL ALLEGATIONS

**31.** Plaintiff's personal cell phone ending in 5482 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendants.

**32.** Plaintiff personally registered the cell phone 5482 on the National-Do-Not-Call Registry on May 21, 2021.

**33.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him or his number ending in 9810 from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**34.** Plaintiff's cellular telephone 9810 is a private residential telephone, used for non-business purposes only.

**35.** Defendant RRK operates as a precious metals dealer.

**36.** Defendant RRK made at least seven (7) unauthorized unsolicited prerecorded message calls to Plaintiff's cellphone. All calls were made without his written or verbal consent. The calls are referred to herein as "The Calls" or "the calls."

**37.** Calls #1-6, on June 11, 2025, Plaintiff received at least six (6) unauthorized solicitation calls from RRK with 631-935-9024 appearing on Plaintiff's Caller ID. Every call the Plaintiff answered was followed by a prerecorded message. Each call Plaintiff answered began with him saying "Hello" and he was greeted by a male robotic sounding voice that stated "**Hi this is Empire Numismatics out of Middle Island New York, listen I'm only calling once, the reason for my call is we just got a small drop of $5.00 American Eagle coins and we're letting a few folks get in at #319.00 a piece..**"

**38.** On each call Plaintiff answered described above, Plaintiff disconnected the call after listening to part of the message and realizing what the call was about.

**39.** On June 11, 2025, at 3:13 PM, Plaintiff called the number appearing on his Caller ID 631-935-9024, and was greeted by Digiantomasso, Digiantomasso confirmed they were Empire Numismatics, provided Plaintiff with their website empirenumismatics.com, told him that calls

8

to 631-935-9024 are sent to his desk directly, and sold him a Benjamin Franklin Half Dollar roll for $880.00, though pushed the sell of ten (10) rolls at $8,880.00. Plaintiff was transferred to Veronica Daly "Daly" to confirm the order.

40. On June 11, 2025, at 3:32 PM, Plaintiff received a text message from Diagiantomasso from his personal cell phone number of 631-992-1469, with the message "Mitch Williams Toll free number 8885757088."

41. On June 11, 2025, at 4:14 PM Plaintiff called the toll-free number of 888-575-7088, provided by Diagiantomasso, and the toll-free number appearing on RRK's website. Plaintiff was greeted by Daly, Plaintiff asked Dally the true name of RRK and Daly told Plaintiff that although Empire Numismatics appears on her paycheck, it is "RRK" that shows on her bank statement. She also stated Klein was the owner of the company.

42. On June 11, 2025, at 5:45 PM, Plaintiff sent RRK and Daly an email notifying them of the violations that occurred and provided RRK with DNC Request.

43. On June 11, 2025, at 5:52 PM, Plaintiff received a call from Klein with 631-871-2333 appearing on his Caller ID, Klein informed Plaintiff he received his email.

44. Call #7, on June 12, 2025, at 2:21 PM, Plaintiff received at unauthorized prerecorded message solicitation call from RRK with 774-217-6574 appearing on Plaintiff's Caller ID. All calls were also within ten (10) minutes. Plaintiff answered each call with "Hello" and was greeted by a male robotic sounding voice that stated, **"Hi this Empire Numismatics out of Middle Town, New York.."** This time the robot was soliciting Plaintiff to purchase Benjamin Franklin rolls at $880.00 each.

45. *Table A* displays calls received from Defendants and or their agent(s), or employees. Table A

| No: | Caller ID: | Date: | Time: | Notes: |
|---|---|---|---|---|
| 1 | 631-935-9024 | Jun 11, 2025 | 11:02 AM | Unauthorized solicitation from RRK |
| 2 | 631-935-9024 | Jun 11, 2025 | 11:03 AM | Unauthorized Solicitation from RRK |
| 3 | 631-935-9024 | Jun 11, 2025 | 11:02 AM | Unauthorized solicitation from RRK |
| 4 | 631-935-9024 | Jun 11, 2025 | 1:55 PM | Unauthorized solicitation from RRK |
| 5 | 631-935-9024 | Jun 11, 2025 | 1:53 PM | Unauthorized solicitation from RRK |
| 6 | 631-935-9024 | Jun 11, 2025 | 1:50 PM | Unauthorized solicitation from RRK |
|  | 631-935-9024 | Jun 11, 2025 | 3:13 PM | called outbound and received partial company information |
|  | 631-992-1469 | Jun 11, 2025 | 3:32 PM | text received from Mitchell Digiantomasso containing company information and toll free number |
|  | 888-575-7088 | Jun 11, 2025 | 4:14 PM | called outbound toll free number provided by Digiantomasso and received RRK company information from Veronica Daly |
|  | 631-871-2333 | Jun 11, 2025 | 5:52 PM | Call from Robert Klein confirming reciept of Plaintiff's email |
| 7 | 774-217-6574 | Jun 12, 2025 | 2:21 PM | Unauthorized solicitation from RRK |

46.     Every solicitation call from Defendants after June 11, 2025, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendants on June 11, 2025.

47.     Plaintiff did not provide his phone number to Defendants at any point prior to the receipt of the initial phone call.

48.     Defendant RRK did not have a written do-not-call policy while RRK was placing solicitation phone calls to Plaintiff.

**49.** Defendant RRK or Klein did not train their employees and/or agents on the existence and use of any do-not-call list.

**50.** Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

**51.** Defendant RRK knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

**52.** Defendant RRK knew or should have known the requirements for making TCPA and Texas sales-compliant telemarketing calls, and thus knew or should have known that the unauthorized solicitation calls and the many disregarded DNC requests complained of herein violated the TCPA, Texas Business Commerce Code 302.101 and all of their regulations.

**53.** No emergency necessitated these calls.

**54.** Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**DEFENDANT KLEIN IS PERSONALLY LIABLE FOR THE CALLS MADE BY RRK**

**55.** Defendant Klein is personally liable for the solicitation calls described herein because he is in control of the databases that store the numbers and contact information in which Plaintiff's information was provided to be called by RRK's phone system.

**56.** Klein is purchased the number 631-935-9024 that was used to make the calls to Plaintiff.

**57.** Klein created the message that was used to make calls to Plaintiff.

**58.** Klein personally uploaded the message to the phone system used by RRK that Plaintiff

11

heard on each call alleged herein.

59.     Klein receives a daily log of all calls that are made with RRK's phone system.

60.     Klein has the admin login to the phone system and has the sole ability from RRK to listen to a live call, record a live call, transfer a live call, disconnect a live call, and/or take over a live call.

61.     Klein pays for the calls made by RRK.

62.     Klein was in full control over the system RRK used to make each solicitation call to the Plaintiff alleged in.

## TEXAS BUSINESS AND COMMERCE CODE 302.101

63.     Plaintiff was located in Texas at all times during the calls at issue.

64.     Plaintiff has been a Texas resident since July 2023.

65.     On May 11, 2025, Plaintiff searched for a telephone solicitation registration for Defendant RRK at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

66.     Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration.  Plaintiff did not find any registration for Defendant RRK.

67.     Defendant RRK has never been registered to telephone solicit from Texas, or into Texas.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

68.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

69.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

70. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

71. Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

72. The calls were to Plaintiff's cellular phone number 407-780-9810 which is Plaintiff's personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

### (against all Defendants)

73. Plaintiff re-alleges and re-adopts paragraphs 1 through 73 of the Complaint as if fully set forth herein.

74. Defendants violated the TCPA, 47 U.S.C. § 227(b)(1)(iii), at least six (6) times by RRK placing non-emergency telemarketing prerecorded messaged calls to Plaintiff's personal telephone number without prior written consent.

75. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by Defendant RRK by the calls described above, in the amount of $500.00 per call.

76. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage in the amount of $1,500.00 as permitted under 47 U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

77. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant RRK and their employees, affiliates and agents from violating 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing prerecorded messages to Plaintiff's cell phone number without prior written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**
**(against all Defendants)**

78. Plaintiff incorporates the preceding paragraphs 1-78 as if fully set forth herein.

79. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

80. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

81. Plaintiff was further statutorily damaged because Defendants' calls willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the

damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

82. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (against all Defendants)

83. Plaintiff incorporates the preceding paragraphs 1-83 as if fully set forth herein.

84. Defendants made at least seven (7) sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code § 302.101.

85. As a result of Defendants violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code § 302.302(a).

86. As a result of Defendants violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code § 302.302(d).

## COUNT FOUR
### Violations of Texas Business and Commerce Code 305.053
### (against all Defendants)

87. Plaintiff incorporates the preceding paragraphs 1-87 as if fully set forth herein.

88. Defendants called Plaintiff's private residential telephone number which violated 47 U.S.C. § 227 (c).

89. As a result of Defendants violations of Tex. Bus. And Com. Code § 305.053 Plaintiff is entitled to the greater of $500; or the Plaintiff's actual damages, for each violation. Tex. Bus. And Com. Code § 305.053(b)(1)(2).

90.     Plaintiff is entitled to an award to not more than the greater of $1,500 for each knowing or willful violation of Tex. Bus. And Com. Code § 305.053(c)(1)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants RRK, Klein, and Digiantomasso jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants' calls violates the TCPA, and Texas Business and Commerce;

C.     An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 7 calls;

D.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for 7 calls;

E.     An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for 7 calls;

F.     An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

G.     Such further relief as the Court deems necessary, just, and proper.

# JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

June 17, 2025,                                              Respectfully submitted,

*Joshua Cacho*

Joshua Cacho
Plaintiff, Pro Se
P.O. Box 26971
El Paso, TX 79926
Jcacho1848@gmail.com